THE BOARD OF COMMISSIONERS OF PILOTS *v.* JOHN H. CLARK and SAMUEL H. SEAMAN, Survivors of HENRY B. CROMWELL, deceased.

| 33 | 251 |
| 133 | 289 |
| 133 | 635 |

A lease of a public wharf from the mayor, &c., of New York, does not confer upon the lessee the exclusive right to its possession, use or control. By the force of the lease, he only becomes entitled to the wharfage accruing thereat.

Under such lease, such wharf continues a public wharf, and all vessels resorting to it are subject to the general rules of law regulating the use of wharves, slips and piers, and the mooring and stationing of vessels.

And the vessels of the lessee are subject to the same rules, &c., as other vessels using said wharf.

Such lessee cannot lawfully place structures upon such pier for his own convenience, which shall materially incumber it, or interfere with its free use for purposes connected with navigation, by the general public.

A firm acting as the common agent of several lines of vessels, causing such structure to be erected and maintained for their accommodation as such agents, though they charge the expense thereof to such vessels, or lines of vessels, are the actors in making such obstructions, and are liable therefor.

APPEAL from a judgment of the Supreme Court.

The action was brought to recover certain penalties imposed by a statute passed in 1858, in the following words: "Whenever any pier or bulkhead in the port of New York shall be incumbered, or its free use interfered with, by merchandise, lumber, or any other obstructions, whether of loose material, or built upon, or affixed to the pier or bulkhead, it shall be the duty of the commissioners [of pilots] to notify the person or persons placing or keeping such merchandise or obstruction on such pier or bulkhead, to remove such merchandise or obstruction within twenty-four hours after such notice; and in case of failure to comply with such notice and to remove such merchandise or obstruction, the person or persons so notified shall be liable to pay to the commissioners the sum of twenty-five dollars for each and every day during which such merchandise or obstruction shall remain on such pier or bulkhead," &c.

The defendants, at the time when the penalties were alleged to have been incurred, and at the time of commencing the action, on the 14th January, 1864, composed the firm of H.

B. Cromwell & Co., but Mr. Cromwell died, after issue joined, on the 3d day of April, in that year, and the action was continued against the two other defendants as survivors.

The alleged obstruction was upon pier No. 9, North river, and it consisted in the erection and maintaining a structure used as a shed upon the pier, the westerly or river end of which building was about three feet from the outer extremity of the pier and extended quite across the pier, a distance of about forty feet. This end was called, in the complaint and by the plaintiffs' witness, a fence. It was ten feet high, or · more, and had a sliding gate in it about nine or ten feet wide, and a smaller gate at the side. After its erection, and on the 3d December, 1863, the plaintiffs caused to be served upon the defendants a copy of a resolution of their board, and a notice, to the effect that the defendants were required to remove the obstruction within twenty-four hours from the time of the service. It was not removed until after the commencement of the action, when the end complained of was taken down by the defendants. The amount of penalties incurred, if the defendants were liable, was $925.

The questions litigated were: 1. Whether the structure was an *obstruction* in the sense of the act, and, 2. Whether the two surviving defendants, against whom the action was depending at the time of the trial, were responsible for ·its maintenance.

On the trial before Mr. Justice DAVIS and a jury, it appeared that the shed was erected by the lessee of the pier for the purpose of protecting property received from vessels, or brought there to be shipped, from rain and from thieves, until it should be removed; that the class of vessels which came to the end of the pier to load or to be discharged were lighters and canal boats, and vessels having a single hatch. As to the actual effect of the fence on the use of the pier, a witness for the plaintiff, who was their. agent, testified that the erection prevented the use of the pier by persons who wanted to get down with carts, and also prevented its use by vessels wishing to unload at the end of the pier. He also swore that when he called upon Mr. Clark, one of the defend-

ants, respecting the fence, in October, 1863, and asked him to remove it, he said they (his firm) kept it there to keep vessels away; that they did not wish anybody to come there, and wanted to occupy the pier exclusively for their own use. The defendant Clark, as a witness for the defendants, denied having made the statement attributed to him. He testified that he had seen lighters and canal boats discharge at the end of the pier while the alleged obstruction was there; that they would swing the goods through the gate inside the shed without difficulty, and that the fence did not interfere at all in discharging lighters and canal boats.

Upon the question whether the surviving defendants were so connected with the erection as to be responsible, the facts were, that the three original defendants were partners in the commission business, as agents for steamers running out of New York, acting as ships' husbands and having the sole direction in New York of the business of the steamers for which they were concerned. The defendant Cromwell was the owner of a line of steamers running between New York and Portland, Maine, and of another line running to New Orleans, except that in one of them another person was the owner of one-ninth part; that these vessels were within the agency of Cromwell & Co., who advertised them; and they came to this pier. Mr. Cromwell was also the lessee in his own name of the pier, and he caused the shed to be erected, the other defendants not being interested, as Mr. Clark swore, in that work. When it was taken down it was done in consequence of the advice of defendants' counsel in the suit, by persons in the employment of the firm. A person named Pierson attended to the business of the steamers on the dock, where there was an office, and where he was constantly employed. His wages were paid by the firm and charged to the steamers; the erection of the shed was also paid for by the firm and charged to the steamers, the expense being divided among them; and so of the expense of taking down the fence. The rent of the wharf under the lease to Cromwell was paid by the steamers, it being divided among them, through the firm, who kept all the accounts respecting the steamers and the

wharf. When other parties paid wharfage it went to the bene-
fit of Cromwell's lines, relieving them from the rent to that
extent. It appeared that Mr. Cromwell was confined to his
house by illness during the time for which the penalties were
claimed, and that he was represented in the business relating
to the steamers by the other defendants. The pier in question
was shorter than those on each side of it. The defendants'
counsel offered to show that the space between the two
adjoining piers, at the end of pier No. 9, was so narrow that
vessels larger than a lighter could not lie at and discharge on
the end; but the evidence was objected to and excluded.
They also offered to show that other piers in the city had
similar fences across the ends, but this testimony was also
excluded. The plaintiffs' counsel inquired of a witness,
who was the agent of the plaintiffs, how he came to go to
the office of Cromwell & Co., on the occasion when he said
he did go there, and spoke with Mr. Clark; to which the
defendants interposed an objection, which was overruled, and
the witness said it was because they occupied that pier. The
defendants' counsel excepted to these several rulings.

The defendants' counsel moved to dismiss the complaint,
claiming that, upon the whole evidence, Cromwell alone
was responsible, and he having died before the trial, the
plaintiffs could not recover against any one. They also
claimed that under an act of April 15, 1858 (ch. 261), the
steamers of Mr. Cromwell's line were entitled to the entire
use and occupancy of this pier. The motion was denied,
and the defendants' counsel excepted. The defendants'
counsel then proposed a great number of propositions which
they requested to have charged, which were resolvable into
these: that the present defendants had no such control of
the pier, that they could remove the fence or be held charge-
able for continuing it contrary to the notice given by the
plaintiffs; and that upon the evidence, the fence was not an
obstruction of the pier within the meaning of the act.

As to the first point, the judge charged that if the obstruc-
tion was placed on the pier or maintained there by the firm
of Cromwell & Co., the action could be maintained against

the defendants as survivors of Mr. Cromwell; but if that person individually possessed and controlled the pier, and the firm merely used it for the accommodation of the vessels for which they were agents, and which vessels were mainly owned by Cromwell, and that the firm as agents and ships' husbands had nothing to do with the pier itself, so far as its control was concerned, or the advantage to be derived from its use as affecting the vessels, then the wrong for which the penalty was provided would be that of Cromwell individually, and the defendants, as surviving partners of the firm, would not be liable in this action. The judge then recapitulated the testimony bearing upon the point, in the course of which, after stating the alleged admission of Mr. Clark, and the general character of the acts which the firm were accustomed to perform in connection with the pier and the vessels, he said : " upon this evidence which certainly makes out a *prima facie* case, it is insisted that the fact should be found by you, that the firm of Cromwell & Co. were maintaining the fence." He then stated the testimony of the two defendants, which they had given as witnesses, denying that they had any relation to or control over the pier or with his management, and did not receive any of the profits, and he concluded his remarks upon this point as follows: "If you are satisfied, looking at this evidence and grouping it together, that the firm of Cromwell & Co. maintained this fence," and if they found it to be an obstruction, " these defendants are liable as survivors of that firm; but if you find, on the other hand, as insisted upon by the defendants, that Mr. Cromwell, as the owner of these ships, furnished it and maintained it without the ship's agents having anything to do with the furnishing, or having the right to control it, then it is your duty to find for the defendants."

As to the character of the alleged obstruction and the law relating to it, the charge was as follows: " That the free and unobstructed use of the piers in the city of New York, for the general purposes of trade and commerce, is matter of public right, which can only be abridged by act of the legislature of the State; that without special license or authority

conferred directly or indirectly by act of the legislature, no private person has a right to interfere with the free use of a pier, or to obstruct free passage over it by all persons, or access to it by all vessels lawfully engaged in trade or commerce, and having occasion to use the pier for the purposes of such business; that if the jury believed there was a fence built across the end of the pier in question, extending over its entire width of forty feet, so as to abridge the free access and passage to and from the pier, and its free use by vessels and the public, then such fence was an obstruction within the meaning of the act upon which the suit was brought; that the fact that there was an opening by a gate in this fence through which some vessels could discharge cargo, was no defense, inasmuch as the public right protected by the law, was to a free use, and not any limited use; that even though the fence in question might have been advantageous to the shippers of goods by the lines of steamers of which the defendants were agents, and thus beneficial to a part of the public, that was no justification for placing or keeping it, if it did in fact deprive the rest of the public of such free use of the pier as they were lawfully entitled to enjoy, and as to which the legislature had given no special privileges to the lessee of the pier.

In commenting on the evidence relating to this part of the case, the judge expressed an opinion that the jury would feel very little embarrassment respecting it; " indeed," he added, " if the learned counsel had asked the questions, I should have felt it my duty to say to you that this was an obstruction in point of law. However, I do not go that length in submitting to you these various propositions." He also held that the statute of April 15, 1858 (ch. 261), had no application to the case. The defendants' counsel excepted to the several points of the cause unfavorable to them, and to the observation of the judge, that certain evidence established a *prima facie* case, and to his remark that he should have held the fence an obstruction in point of law, if he had been asked to do so.

The verdict was for the plaintiffs; and the judgment having been affirmed at a General Term, the defendants brought this appeal.

*John E. Parsons,* for the defendants and appellants.

I. The question whether the fence was an incumbrance or obstruction to the pier was of fact for the jury.

The plaintiffs, by one witness only, and he a man who would not give a direct answer to the simplest question, on cross-examination, attempted to show that the fence obstructed the use of the pier by vessels lying at its outer end.

The defendants produced two witnesses who swore that the fence did not in any way interfere with such use.

It was error, therefore, for the judge to charge that, if asked, " I should have felt it my duty to say to you that this was an ·obstruction, in point of law;" and that " the only really important issue for you is, by whom was this structure erected and maintained."

Nor is this objection cured by the nominal submission, notwithstanding, of the question to the jury. Their judgment was necessarily controlled by this expression of the judge. For the court to say : " as matter of law, this is an obstruction; but I leave it for you to say whether it is or no," is to prevent the jury from exercising their own judgment. (*The N. Y. Firemen's Ins. Co.* v. *Walden,* 12 Johns., 513 ; *Read* v. *Hurd,* 7 Wend., 408, 411.)

1. Again : It was error, the plaintiffs' witness having sworn that the fence prevented the use of the pier by vessels lying at its outer end, to refuse to permit the defendants, on the cross-examination of this witness, and by their own witnesses in contradiction, to show that no vessel, in consequence of the narrowness of the slip, could lie across the end of the pier, with the loading or unloading of which the fence could interfere.

II. If, however, there was any liability it was of Mr. Cromwell personally. The present defendants and their firm neither erected nor maintained the fence; and as to them there should have been a nonsuit. The evidence does not sustain a verdict against them ; and the question submitted to the jury as to them was of law rather than of fact.

1. The agent of a vessel is not, as such, responsible for the erections upon a pier which such vessel may use.

They have not even the selection of the pier, this being delegated to the harbor masters. (Laws of 1850, ch. 72.) .

2. The fact that Mr. Cromwell, who owned the vessels and who furnished to his own vessels a pier, of which he was lessee, was also a partner with Messrs. Clark and Seaman, did not, as to them, alter the case.

The firm was a legal entity, quite distinct from Mr. Cromwell; it mattered not to them what pier the vessels used, or by whom owned. · They were no more responsible, from the fact that Mr. Cromwell was the proprietor of the pier, than if any other person had been such proprietor.

3. If Mr. Martin, plaintiffs' sole witness, had confined his testimony to what he knew, as shown on his cross-examination, Mr. Seaman would not even have been connected with the vessels, not to speak of the pier; and Mr. Clark, only by a single statement, alleged by Mr. Martin and denied by Mr. Clark.

. The fact, however, was, and so they came forward and frankly stated, that Messrs. Clark & Seaman were the ships' husbands, among other vessels, of Mr. Cromwell's steamers.

The motion for a nonsuit was made on these and other specific grounds, and should have been granted.

III. Messrs. Clark & Seaman had no legal right, without the permission of Mr. Cromwell, to interfere with or remove the fence.   He was the sole lessee of the pier, and owner, with Mr. Hammett, of the vessels which used it.

1. The judge should have so charged.

2. And should also have charged, that if they had no legal right to remove the fence, they were not liable.

3. And, upon this ground, the defendants should have judgment.

4. Again: It was error to charge, that as ships' husbands, they were *prima facie* liable ;

Even if Mr. Clark, as he denies, told Mr. Martin: "We keep the fence there to keep vessels away."

(*a.*) If he said so, he used the "we" as meaning Mr. Cromwell.

(*b.*) As applied to himself and Mr. Seaman, the remark is proved untrue by all the testimony.

(*c.*) Mr. Seaman could not be bound by any such statement.

There was no evidence that the partnership had anything to do with the pier, and that it did cannot be proved by the admission of one partner against the other. (Collyer on Partnership, §§ 442, 443, 779.)

Again: Mr. Martin, who swears to this statement, says it was made on October 6, 1863. It is not the erection, nor the maintaining, but the continuing after notice to remove, which creates the liability. This notice (the formal notice, from the service of which the jury gave the penalty) was not served till December 3, 1863. Mr. Clark's alleged statement, if construed literally, did not, therefore, apply to the material time (that subsequent to December 3, 1863), and is not inconsistent with the established fact, that these defendants had no legal power to remove the fence after the notice was served.

IV. The exceptions to evidence were well taken.

1. It was proper to show the general arrangement of piers to be similar to that of pier No. 9.

(*a.*) This was especially so in the view taken by the plaintiffs, that they were entitled to recover on the ground that the fence constituted a nuisance.

The situation, location and comparative use and character of that which is claimed to create a nuisance, control the question of whether it does or not. (*Hart* v. *Mayor, &c., of Albany*, 9 Wend., 571; *Hecker* v. *N. Y. Balance Dock Co.*, 24 Barb., 215.

That such was by permission of the legislature, might be an answer to the evidence, but the statement that such was the case was no objection to the testimony.

2. What prompts a witness is quite immaterial. An improper question here elicits a still more improper answer. The witness reasserts a mere conclusion, which he himself had disproved.

V. The foregoing points are on the basis of the correctness of the requests of the plaintiffs, charged by the judge, to which the defendants excepted.

The defendants do, however, submit: Mr. Cromwell was the lessee, and as such sole owner *pro hac vice* of the pier.

No qualification of this ownership was proved. His employment of the pier for the purposes of trade and commerce, completely occupied it. The cases showing the right of legislative interference, cited below by the plaintiffs, apply only to streets, legally appropriated to the public use on compensation to owners, or to navigable waters, never the subject of private ownership.

No case affirms the legislative control of the surface of a pier, or the constitutional right to impair the owner's interest in it, without compensation to him.

Mr. Cromwell, therefore, had the right to erect and maintain the fence. (*Wetmore* v. *The Atlantic White Lead Co.*, 37 Barb., 70.)

The statute in question is highly penal. To sustain the judgment the evidence must clearly show the character of the pier to be such as to bring it within the control of the legislature without regard to private rights. (*Sprague* v. *Birdsall*, 2 Cow., 419; *Millard* v. *Lake Ontario, Auburn & N. Y. R. R. Co.*, 9 How. Pr., 238.)

There is no evidence that the pier in question is the extension of a street or which can give any public character to it; on the contrary, the evidence is, that it is a private pier.

*Wm. A. Butler* and *J. H. Reynolds*, for the respondents.

I. The fence in question, being built upon a pier in the navigable waters of the harbor of New York, and across its entire width, so as to interfere with its free use by the public, was a violation of the provisions of section eight of the act of April 16, 1857, establishing regulations for the port of New York (as amended), and being unauthorized by law, was a public nuisance, irrespective of the degree of inconvenience which it occasioned, or of any question of convenience or inconvenience. (Act April 16, 1857, Laws 1857, vol. 2, pp. 487, 488; Act April 15, 1858, Laws 1858, p. 363; *Fowler* v. *Saunders*, Cro. Jac., 446; *The King* v. *Russell*, 6 B. & C., 566; *The King* v. *Carlisle*, 6 Carr. & Payne, 636; *The King* v. *Ward*, 4 Ad. & E., 384; *Hart* v. *The Mayor of Albany*, 9 Wend., 571; *The People* v. *Cunningham*, 1

Den., 524; *Davis* v. *The Mayor of New York*, 4 Kern., 506, and see p. 525, and cases collected there; *The People* v. *Vanderbilt*, 38 Barb., 282; *S, C.*, 26 N. Y., 287.)

1st. The court correctly charged the jury in the five several propositions in reference to obstructions on the piers of the port of New York, as follows:

*First.* That the free and unobstructed use of the piers in the city of New York, for the general purposes of trade and commerce, is matter of public right, which can only be abridged by act of the legislature of the State.

*Second.* That without special license or authority, conferred, directly or indirectly, by act of the legislature, no private person has any right to interfere with the free use of a pier, or to obstruct free passage over it by all persons, or access to it by all vessels lawfully engaged in trade or commerce, and having occasion to use the pier for the purpose of such business.

*Third.* That if the jury believed there was a fence across the end of the pier in question, extending over its entire width of forty feet, so as to abridge the free access and passage to and from the pier, and its free use by vessels or the public, then such fence was an obstruction within the meaning of section eight of the act to establish regulations for the port of New York.

*Fourth.* That the fact that there was an opening by a gate in this fence, through which some vessels could discharge cargo, is no defense, inasmuch as the public right, protected by the law, is to the free use, and not to any limited use.

*Fifth.* That even though the fence in question might have been advantageous to the shippers of goods, by the lines of steamers of which defendants were agents, and thus beneficial to a part of the public, this is no justification for placing or keeping it, if it did, in fact, deprive the rest of the public of such free use of the pier as they were lawfully entitled to enjoy, and as to which the legislature have given no special privilege to the lessee of the pier. (See cases cited above, and also as to the public right in the piers in the port of New York, and the power of the legislature to regulate their use;

Act April 17, 1784, Jones and Varick, p. 125, § 8; Act March 31, 1801, Davies' Laws relating to the city of New York, p. 400, § 9; Act April 19, 1813, id., p. 559, § 235; Act April 19, 1830, id., p. 705, § 1; Act April 16, 1857, Laws 1857, vol. 2, p. 487, § 8; Act April 15, 1858, Laws 1858, p. 363, § 5; *Vanderbilt* v. *Adams*, 7 Cow., 349.)

2. There was no error in the remark of the learned judge, to the effect that, if so requested, he would have felt it his duty to instruct the jury that the fence was an obstruction in point of law. He left the question of fact to the jury, and to the expression of his opinion on the question of law, no exception will lie, especially as that opinion was fully sustained by the authorities. (See cases, *supra*, under first point.)

3. The jury having passed upon the question of fact, put in issue by the answer, as to the fence being actually an interference with the free use of the pier, its illegality is established by the verdict, and cannot be reviewed on this appeal.

II. The judge, at the trial, properly left to the jury the question of fact, by whom the obstruction was placed or kept upon the pier; and there was no error in his refusal to dismiss the complaint at the close of the evidence, or in his instructions to the jury in reference to the parties liable for the penalty.

1st. The evidence clearly showed that the fence was erected in connection with, and for the benefit of, the business of the line of steamers of which the firm of H. B. Cromwell & Co. were agents and managers, and in respect to which they held themselves out to the public as the sole proprietors, in their firm name; that they had and exercised absolute control over the pier, in respect to the entire business of the ships composing the line, and that when notified by the plaintiffs to remove the obstruction, they gave no intimation that the wrong party was notified, but frankly avowed themselves as maintaining it, stated the object for which it had been erected, and their unwillingness to have it removed.

It was a question of fact for the jury to say whether the firm, or only the senior member of it, who was confined to

his house by the illness of which he afterwards died, during the entire period after the notice was given, were the parties who actually, and especially after the notice, placed or kept the obstruction on the pier.

And it was a question for the jury, whether they believed Martin's positive testimony as to Clark's declarations, or Clark's inferential and argumentative denial.

2d. The question of the liability of Clark and Seaman, as survivors, was left to the jury, under instructions by the court, which gave the defendants the benefit of every ruling to which they were entitled, and the several exceptions to the charge, in this respect, are untenable.

(*a.*) There was no error in the instruction that the defendants were sued as members of the firm of H. B. Cromwell & Co. They were so sued, and the action was continued against the present defendants as survivors. They were, of course, liable as such survivors, provided the jury found that the acts complained of were done by the firm, and they did so find.

(*b.*) Nor was there error in the instruction that it was only necessary for plaintiffs to show that the firm of H. B. Cromwell & Co. committed the alleged offense. The firm, and not its individual members, were the parties complained of.

(*c.*) Nor was there error in the further remark of the court that the excision of Mr. Cromwell and his estate from the case had no bearing on the question.

III. The act of April 5, 1858, authorizing the exclusive use of piers by certain specified lines of steamers and of steamboats plying between certain specified ports, has no application in this case; the defendants' steamers do not come within the law, not being vessels enumerated in the act. (See Act April 5, 1858, Laws 1858, 413.)

IV. The offers to show that other piers in the city have similar fences and obstructions upon them were properly rejected, as also the offer to show that the situation of pier No. 9 was such that only lighters could conveniently use the end of it. The evidence in each instance was wholly irrelevant and inadmissible. The state of the facts proposed to be

proved did not limit the operation of the law, or prevent its provisions from applying to the obstruction in question.

V. The records of the board of commissioners of pilots were properly given in evidence to show their official action on the subject. (Greenl. on Ev., § 483 ; *Bissell* v. *Hamlin*, 6 Duer, 512.)

VI. It is matter of notoriety that the piers and wharves of the city of New York, are, to a great extent, appropriated, without right, by private parties, for the convenience of their own business, to the great detriment of the public interest. In the present action it was proved, to the satisfaction of the jury, that the defendants, the firm of H. B. Cromwell & Co., the agents of a leading line of steamers, had deliberately persisted, in spite of repeated notices and warning from the proper authorities, in keeping the obstruction complained of, upon the pier in question, solely for their private advantage, and so as to deprive all vessels, except those of their own line, and occasionally small lighters, of the use of the end of the pier. This persistent violation of law was properly rebuked by the verdict of the jury — and juries rarely give verdicts in suits for penalties except in very clear cases — and it being fully sustained by the evidence, their verdict should not be disturbed.

DENIO, Ch. J. The fact that H. B. Cromwell was the lessee of the pier No. 9, did not confer upon him or the vessels which he owned any exclusive right to its possession, use or control. By force of the lease he became entitled to the wharfage accruing at the pier. So far as it was used by his own vessels or by vessels in which he was interested, the wharfage, if there had been any, was to be paid by the same party who was entitled to receive it. So far as it was made use of by other parties, he, as the grantee of the city, succeeded to the rights of the corporation in respect to wharfage. It was, notwithstanding the lease, a public wharf, and the vessels resorting to it, whether they were those of the lessee or of other parties, were subject to the general rules of law, regulating the use of the wharfs, slips and piers, and

the mooring and stationing of vessels. (Laws 1850, ch. 72, § 3.)

The act of 1858, conferring the exclusive right to the use of wharves upon certain steamboat lines and single boats, does not, in its enumeration, embrace the lines or vessels in which Mr. Cromwell was interested. (Laws, ch. 161, § 1.) It is consequently inapplicable to this case.

It follows that neither he nor the persons associated with him in business, could place structures upon the pier for their own convenience, which should materially incumber it or interfere with its free use, for purposes connected with navigation by the general public, however advantageous the erection might be to him or those interested with him. The end of the shed in question substantially cut off the outer end of the pier from the adjacent water, leaving only about three feet of ground between it and the river, a space quite insufficient for the stowage of property received from shipboard or intended to be laden upon water craft. The persons maintaining this barrier of course controlled the fastenings of the door which was inserted in it, and without their license goods could not be carried along the pier to or from vessels lying at the end. But if the door were left always open, the space for landing would be reduced from forty feet to ten feet. It cannot be denied but that this was an incumbrance of the pier, nor but that it interfered essentially with its free use. It is no answer to say that the shed would be useful to Mr. Cromwell's vessels, or that other persons could swing certain kinds of property through the gate without difficulty. The language and the obvious policy of the statute is, that these piers and bulkheads should be kept wholly clear of incumbrances, and it will not answer for parties permanently to engross portions of their area, and then ask a jury to speculate upon the degree of inconvenience which the public would suffer, and whether it was not fairly balanced by the advantage of the structure which constituted the incumbrance. The language of Lord Denman, in *The King v. Ward* (4 Adolph. & Ellis, 384), approved of by this court in *Davis v. The Mayor, &c., of N. Y.* (4 Kern., 525),

is peculiarly applicable to this question. It is said, in effect, that capitalists or others cannot be permitted to interfere with known public rights from motives of personal interest, on the speculation that the charges made may be rendered lawful by ultimately being thought to supply the public with something better than what they actually enjoy. I am of opinion that the judge might properly have charged that this fence was, in itself, an incumbrance of the pier, and that its authors were liable to the penalties prescribed by the act. The charge actually given was more favorable to the defendants than the law entitled them to.

The question whether the three defendants who were prosecuted were all liable for the penalties was one of fact, to be determined upon a consideration of all the evidence in the case. The shed, it is said, was erected for the accommodation of the steamship lines of Mr. Cromwell, in the navigation which was prosecuted by their means to and from the port of New York. It was shown to have been erected under the direction of Mr. Cromwell; but whether he acted in its erection as a member of, and in behalf of, his firm, or as the owner of the steam vessels, is not certain. Mr. Clark's testimony is, that he acted solely in its erection; but this was rather an inference than the statement of a fact. The expenses of the workmen who put it up were actually paid by the firm and entered on its books. They were reimbursed for these expenses by charging them to the steamers, in certain proportions, in the same manner that they charged the other expenses. They collected the freight and charged the expenses, and were allowed for them in their settlements. It is material to bear in mind that the business of the firm was not limited to the steamers of Mr. Cromwell's lines. It embraced the business of whatever steamers came consigned to their house. I gather from the testimony that the wharf charges, embracing the erection of this shed, were averaged among the several vessels for which the house of Cromwell & Co. were the consignees. It was a part of their business to provide any accommodations upon the wharf which they conceived necessary to their business of receiving and ship-

ping goods carried by the vessels to which their agency extended. The wages of Peirson, who was the receiving clerk of the concern, and attended to the business on the wharf, were of the same character. These wages were paid by the steamers in proportion to their respective business. And yet I do not doubt but that he was the servant of the firm. No privity of contract could well exist between him and the owners of the several steamers which came consigned to the firm. So, as to this shed, neither one or all of the owners of the vessels who were accommodated by it, can be said to have erected it. The firm, which was their common agent, built it for the accommodation of the ships, and for the purpose of facilitating the business of their agency. They maintained it for the same objects and purposes. Although they had a right to charge the cost of erecting and keeping it up, to the vessels which came within the scope of their agency, along with their commissions and other expenses, they were, as between themselves and the public authorities, the actors in erecting it; and if it was a violation of law, they were, in my opinion, responsible for the consequences. There was, moreover, evidence, in the declarations of Mr. Clark to the plaintiffs' witness, that they put it up in order to secure an advantage of the vessels for whom they were agents. This was, it is true, contradicted by Mr. Clark, as a witness for the defendants, but it raised a question for the jury. Upon the whole, I am of opinion that the judge would not have been authorized to pronounce, as matter of law, that Cromwell was the only one of the defendants answerable for these penalties, and on that ground to withdraw the case from the consideration of the jury. The nature of the defendants' agency depended upon questions of fact arising upon the testimony of Clark, as to the manner of transacting the business of the firm and keeping its accounts, and they were rightfully submitted to the jury. The remarks of the judge, as to certain testimony having established a *prima facie* case, were not objectionable. It is the duty of a circuit judge to group the evidence and to indicate the bearing of its several parts upon the issue to be determined.

The testimony offered and rejected, respecting the space between the adjoining piers, was immaterial, if I am right in holding that the end of the pier could not be rightfully cut off from the water. It was clear, upon all the evidence, that certain classes of vessels could and did discharge at the end. Whether large vessels could do so or not was of no moment. It was not improper for the plaintiffs to show that their witness was led to apply at the defendants' office, for the reason that they were occupying the pier.

I do not perceive that any error was committed on the trial of the cause, and am of opinion that the judgment ought to be affirmed.

In which all the judges concurred.

Judgment affirmed.