# SUPREME COURT.

## Conrad N. Jordan agt. The Metropolitan Gas-Light Company.

*New York (city of) — Ferry franchise — Grant of lots under the waters of the Hudson river — Reservation in conveyance for the uses and purposes of public streets — Effect of — Injunction.*

Where land under water has been conveyed by the mayor, &c., of New York, "saving and reserving" a portion thereof "for the uses and purposes of public streets, avenues and highways," the grantee takes no substantial right in the part so saved and reserved. It was the intention of the grantors by such clause to retain so much of the land as came within the boundaries of the streets, and it is to be construed in such manner as to carry into effect the intention of the parties.

The use of land so reserved for a ferry and approach thereto is in accordance with such reservation.

Where a ferry has been established for many years at the foot of a street so reserved, with the acquiescence of the grantees of the land out of which the street is reserved, it is presumed that such ferry was established there by the exercise of lawful authority.

Where ferry property has become unsafe and insufficient for the public needs the city may require the same to be made safe and sufficient.

In such case, where the improvements are to be confined within the limits of the street over which the authority of the street has been retained, the grantee cannot interfere to prevent their being made.

The grantee cannot by erecting piers near the street line restrict or limit the right of the city to provide for the improvement of the street.

The city may delegate to another the right to make improvements in streets which it might itself make.

*Knickerbocker Ice Company agt. Forty-second Street Railroad Company (ante, 210) explained and distinguished.*

*Special Term, June, 1883.*

Motion by the plaintiff for the continuation of an injunction restraining the defendant from interfering with the construction of a ferry-house and the improvement and extension of the ferry terminus at the foot of Forty-second street, in the city of New York, and by the defendant for the continuation

of an injunction restraining the performance of the work by the plaintiff.

*Alexander & Green, Charles F. McLean* and *William C. Gulliver,* for plaintiff.

*Richard S. Newcombe, John H. Strahan* and *Albert Cardozo,* for defendant.

DANIELS, *J.* — The ferry property which the plaintiff has been engaged in improving and extending was authorized to be located at the foot of West Forty-second street on or about the 10th of July, 1856, and it actually went into operation on the 2d of June, 1858. It continued to be operated from that time until the plaintiff became possessed of it, under the authority of the common council of the city of New York. Subsequent to the commencement of his possession, and on the 30th of April, 1883, he received a lease of it for the period of ten years from the 1st of May, 1881. The ferry was located and operated under the authority vested in the city of New York by its original charter, and the law afterwards enacted declaratory of its powers and authority, and at the time when it was established no question seems to have been made as to the right of the city to locate and maintain a ferry at that point. Before the time when it was located, the city conveyed the property now owned by the defendant to Charles E. Appleby, who continued to own it until the 1st of February, 1860, when he conveyed it to the defendant. And the fact that the ferry was maintained with the apparent acquiescence of Appleby, the defendant's grantor, and also with that of the defendant itself after it acquired title to the property, very decidedly confirms the presumption that it was established there by the exercise of lawful authority on the part of the city.

Before the plaintiff received his lease the business of the ferry had increased to such an extent as to render the facilities made use of insufficient for the transaction of the business, and the property itself, from the effects of age and use,

Jordan agt. Metropolitan Gas-Light Company.

required material improvements to be made in its form,. extent and construction. These were not only necessary for the business being transacted by the ferry, but also for the purpose of increasing its capacity to such an extent as to render it adequate to the additional business required to be done by the termini of one or more railroads at Hoboken, on the opposite side of the Hudson river. That the ferry property required to be improved and extended to a very considerable extent for these purposes is clearly established by the allegations of the complaint and the affidavit made in support of the application for the injunction. The city authorities also appear to have taken this view of the propriety of making these improvements and extensions, for on the 10th of March, 1883, the common council adopted a resolution requiring that to be done. Not only the convenience of business, but the safety of persons making use of the ferry, seem to have combined in prompting this action, and after the passage of this resolution an application was made by the plaintiff to the board of department of docks for permission to make these changes and improvements. Previous to the time of making this application the board had adopted a plan for the improvements of this part of the water front of the city. This was done under the authority of chapter 574 of the Laws of 1871, section 99, subdivisions 2 and 3, and the same provisions in substance were afterwards embodied in chapter 15 of chapter 410 of the Laws of 1882.

It has been objected that the action of the board was not taken in the manner prescribed by the statute, but it very clearly appears that the plans which were adopted were presented to and approved by the commissioners of the sinking fund of the city, and that with the action of the dock department itself was all that was essential to render them legal and obligatory. And it was because of this authority and the action taken under it that the application was made by the plaintiff to the board of department of docks for leave to make the changes, extensions and improvements directed by the common council of the city. The proposed changes and

improvements were wholly located within the bounds of Forty-second street, and the application made to the board was upon the basis that they should be confined within those limits. And the board did, on the 20th of March, 1883, in compliance with the application of the plaintiff, give its consent, by means of formal resolution, to the making of the changes and improvements proposed by him. They were described in detail in the resolution and were wholly restricted to the land lying within the bounds of Forty-second street, and in order to secure their construction under the terms and qualifications directed by the resolution it was finally provided that all the described work should be done under the direction and supervision of the engineer-in-chief of the department of docks.

As the ferry had been located and maintained under the apparent authority of the city, and the plaintiff, by means of its reserved power, was directed to make the improvements deemed to be necessary for the safe and convenient use of the ferry, and the work itself was particularly prescribed and limited by the department of docks, to which authority over it had been given by the act of 1871 and the act of 1882, it certainly had the appearance of regularity as well as legality. It was for the city authorities to determine what was appropriate and judicious upon this subject, and to prescribe the directions adapted to carry that determination into effect. Its supervision and control of the property for the purposes of the ferry seems to have been co-extensive with the exercise of this power. And as the facts have been made to appear, it was not only proper but necessary that the work itself should be done for the convenience as well as safety of the public having occasion to make use of the ferry.

But even if the proceedings of the common council and of the board of department of docks should be regarded as irregular, if no rights of the defendant can be abridged or affected by the irregularity, it is difficult to see how the latter is in the position to make any complaint. If any

ground upon which it can properly be made exists, the right-to make it would seem to be confined either to the common coun cil of the city or the department of docks having jurisdiction and authority over the water front of the city ; and as long as neither of these bodies complain of the work, but on the other hand have expressly directed it to be done, the defendant is not in a condition to question the propriety of the use of this authority unless its own rights are to be injuriously affected by the changes to be made in the ferry property.

In support of its objections to the changes proposed to be made the defendant has assailed the work as unlawful under the terms of the deed executed and delivered by the city of New York to Charles E. Appleby, the defendant's grantor. By this deed the city conveyed the property from the origi-nal high-water line, at the center of Forty-second street, to the westerly line or side of Thirteenth aven ie as that was then projected. On the westerly bounds of Thirteenth avenue the line was extended at right angles in a southerly direction to the center of Forty-first street, and by the description con-tained in the deed it included the land between the center of Forty-second and Forty-first streets, extendin g easterly to the original line of high-water mark. But as to so much of the land as was within the boundaries of the streets, the deed contained a clause, "saving and reserving from and out of the hereby granted premises so much thereof as by the said map annexed forms part of portions of the Twelfth and Thirteenth avenues and Forty-first and Forty-second streets for the uses and purposes of public streets, avenues and highways as hereinaf-ter mentioned." The clause contained in the deed and those referred to are substantially the same as those inserted in the deed to Astor, which was considered in *Langdon* agt. *Mayor*, *&c.* (28 *Hun*, 156). Whether this clause created an exception or simply a reservation was a subject which was discussed on the hearing of the motion. But it is not deemed to be neces-sary, as it was not in the case just mentioned, definitely to determine that point, for in either view, whether technically

an exception or a reservation, the effect of the clause would be essentially the same, for at the time when this deed was executed and delivered the statute was in force which required it to be construed in such a manner as to carry into effect the intention of the parties (3 *R. S.* [*7th ed.*], 2205, *sec.* 2). This provision requires the terms made use of to be considered rather than the technical designation which otherwise might be appropriately applied to them. The object of the legislature was to promote the purposes and designs of the parties; and when that can be ascertained it is the duty of the court to carry them into effect. What was intended by the use of this clause is reasonably free from doubt. It was to retain so much of the land described as came within the boundaries of the streets for their use and convenience as avenues of that description. Notwithstanding the nominal extension of the lines in the deed to the center of the streets themselves, it was still the purpose, by means of this clause, to maintain and preserve the appropriation of so much of the property as was required for the streets for the ordinary uses and purposes of public streets; and while the deed in form nominally conveyed the title itself to the land located in the streets, it was still of no substantial value to the grantee as long as this use was saved and reserved to the public. No substantial right, therefore, of the defendant was invaded by providing for the extension of the ferry to the outer bounds of Forty-second street. The defendant itself could make use of the land over which the street was in terms prescribed for no available purpose whatever. The right to regulate, control and improve it for all the purposes of the street was vested, in the municipality, and no legal injury beyond that of a mere nominal character could by any possibility in contemplation of law be produced to the defendant by means of this extension of the ferry property (*Matter of Lewis Street*, 2 *Wend.*, 472).

The case of *Knickerbocker Ice Company* agt. *Forty-second Street Railroad Company* (65 *How.*, 210) has been urged upon the attention of the court as being in conflict with this view,

Jordan agt. Metropolitan Gas-Light Company.

but such is clearly not its effect. The point there considered, and upon which the injunction was allowed, was under different circumstances and between parties differently related to the subject-matter; and it was because the work was not to be done under any requirement of the city, or as part of any general plan of the dock department and the commissioners of the sinking fund for the improvement of the water front, that it was considered proper by the learned justice presiding in the case to continue the injunction (*Id.*, 222, 223). And it was continued with the qualification that in case the defendant should be required by the city to do the work then in controversy that the injunction should cease to operate (*Id.*, 224, 225). The decision as it was made in this case recognized and confirmed the right of a party to make an improvement of this character within the bounds of the street, notwithstanding the existence of such a conveyance, when that should be required and directed by the constituted authorities of the city. This work was authorized and directed in that manner, and this is accordingly an authority sustaining the plaintiff's right to make the extensions and improvements directed by the common council and the board of department of docks.

As the work has been directed it does not appear to carry the solid filling in the street beyond the bulk-head line established by the department of docks. From that point the ferry property as well as its slip are to be constructed, and the filling in and pavement required east of the ferry-house on the street was clearly authorized by the authority reserved in the deed over the land within the boundaries of the street. But whether the city itself made these particular improvements on the street, or delegated the power to make them to the plaintiff, could be a fact of no moment whatever to the defendant. In either view it was no invasion of its rights, and it involved no more than the use of the power reserved by the deed, which in effect authorized the authorities of the city to improve the street in such a manner as to adapt it to

the safe and convenient use of the public.   Under the general authority of the city to establish and provide for maintaining the ferry, and that necessarily reserved by the deed for the improvement and maintenance of the street itself, the plaintiff appears to have been legally authorized to make the changes and improvements proposed to be made by him at the present terminus of Forty-second street.

It has been objected that these improvements are not within the plans and lines adopted by the department of docks with the assent of the commissioners of the sinking fund.   But because they do not extend to the outer extremity of the pier line adopted, that result certainly cannot be held to follow. As far as the improvements have been permitted they are substantially within the plans and lines of the dock department ; and whether they shall hereafter be projected further into the water must necessarily depend upon what this department may consider to be advisable or judicious hereafter.

The defendant insists, and affidavits have been produced in support of the position, that the improvements and changes will abridge the advantageous use of the property south of the street line described in the deed executed by the city to Appleby.   But if that should prove to be the fact, as long as they are to be confined within the limits of the street over which the authority of the city has been retained, it cannot for that reason interfere to prevent the improvements and changes from being made.   If the use of its own property shall be abridged in this manner that will result from the fact that its northerly pier line was constructed too near the southerly line of Forty-second street.   It could not, by locating it there in that manner, restrict or limit the right of the city to provide for the improvement of this street and of the ferry at the foot of it, as that has been allowed for the purpose of meeting the exigencies and convenience of traveling public.

But, in answer to this objection, the affidavits have been produced showing that a sufficient space will still be left between the northerly wharf line of the defendant's pier and

Jordan agt. Metropolitan Gas-Light Company.

the southerly line of the ferry improvement for taking in, loading and discharging vessels. The only abridgement of the defendant's use of its dock is stated to be the fact that so many vessels will not hereafter be able to be there at the same time as have been heretofore. But that it will still retain the ability of taking off and shipping cargoes by adopting regulations suitable for that purpose to such an extent as to meet all the demands of its business, is a fact presumably well shown by the affidavits, and from the distances which appear to have been given, this conclusion seems to be warranted by the circumstances. But if that should not be the case, its dockage conveniences can be extended by changing the northerly line of its pier to a point farther towards the south, and it will be no severe hardship upon the defendant to require so much of a sacrifice to be made, if it shall be required by an improvement which is shown by the affidavits to be so essential to the convenience and safety of the public, and to the proper transaction of the business seeking this ferry. As the facts are presented by the papers, the plaintiff appears to be lawfully entitled to proceed with the enterprise designed to be made, and which has received the sanction and approbation as well as the direction of the authorities of the city entitled to be heard upon the subject.

They do not complain, but on the other hand have approved and required the projected work to be done, and as these authorities have the legal right to control the street and its terminus in this manner the defendant cannot lawfully prevent the directions given from being carried into effect. The injunction applied for by the plaintiff will, therefore, be allowed, and that applied for by the defendant be denied.