## N. Y. SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK agt. CHARLES H. MALLORY AND OTHERS.

The *Department of Docks* in the city of New York have no authority to allow persons to build sheds or other buildings for the protection of freight or for any other purpose, on the piers or wharves of the city.

The only power conferred upon the Department of Docks in reference to wharves, piers and slips being that which had been conferred by acts of the legislature or by charter upon the corporation of the city of New York, and its officers connected therewith, and others in relation thereto, and none of them contained the general power to erect or permit the erection of any such incumbrances.

THIS action was commenced by the attorney-general for a perpetual injunction, restraining the defendants, Charles H. Mallory & Co., from erecting a shed over pier No. 20, East river, under a permit from the Dock Department, of which the following is a copy:

CITY OF NEW YORK, DEPARTMENT OF DOCKS,
[E | Seal. c. 1,860.]     346 and 348 Broadway.
No. 189.     NEW YORK, *August* 19, 1873.

We, the undersigned, Commissioners of the Department of Docks, hereby permit C. H. Mallory & Co., during the pleasure of the board, and in conformity with its rules and regulations, to *erect* on *pier* 20, *East river*, a *shed* for the protection of freight, in accordance with *resolution* adopted at meeting of the *Board of Docks*, held *July* 3d, 1873. The dimensions of said *shed* being as follows: 400 *feet or more*

*long, thirty-nine feet wide, and eighteen to nineteen feet high.*

JACOB A. WESTERVELT,
WM. GARDNER,
W. BUDD,
*Commissioners.*

On the complaint and accompanying affidavit a preliminary injunction was granted by judge FANCHER, and an order requiring the defendants to show cause why it should not be continued.

The motion to continue the injunction was argued before judge INGRAHAM, and an order made by him, September 22d, 1873, denying the motion and dissolving the injunction.

The concluding paragraph of judge INGRAHAM's opinion was as follows :

" While the above views render it proper to dissolve the injunction, I think proper to add that, if the plaintiff proposes an appeal to the general term it would not be advisable to proceed with the erection of these sheds until such appeal is decided. That court will very soon be in session and the case then heard."

Messrs. C. H. Mallory & Co. proceeded to cover the pier with a shed, pursuant to the permit, and completed the work shortly after the dissolution of the injunction.

An appeal was taken on behalf of the people from the order dissolving the injunction to the general term.

The appeal was argued at the general term, held in October last, before justices BRADY and FANCHER, by William Allen Butler for the people, appellants, and Stephen P. Nash for the defendants, respondents.

On December 29th, 1873, the court announced its decision, reversing the order, with costs.

BRADY, *J.*—The injunction granted in this case was dissolved by presiding justice INGRAHAM, upon a construction

People agt. Mallory.

of the statute passed in 1871, by which he thought the department of docks was invested with power to permit the erection of such a structure as the defendants in this case desired to create. He concedes that prior to that statute, amending, as it did, one passed in 1870, there was no authority for such an erection, the courts having pronounced against them, and the legislature having expressly prohibited their construction.

The question presented *in limine*, is, therefore whether this view of the statute of 1871 must be sustained. The acts of the legislature in reference to wharves and piers have, either directly or impliedly, prohibited incumbrances upon them (*See Colonial Statute, January,* 1770, *Van Schaack,* 563; 1 *act of* 1784; *Jones* agt. *Varick,* 125, 126 [*which is substantially a re-enactment of the Colonial Statute*]; *act of* 1791, *March* 10, 2 *Greenleaf,* 354; *Revised Laws,* 1813, *chap.* 86, §§ 227, 233, 234, 235; *act of* 1857, *laws, vol.* 2, 487; *act of* 1858, *laws, chap.* 226, *p.* 363). All these are expressions of the legislative intent that the wharves and piers should not be incumbered, the design being to give to and preserve for them the character of highways—to make them part of the public streets. The act of 1813, section 227, as stated by justice INGRAHAM, provided that no building of any kind or description whatsoever, other than piers and bridges, should at any time thereafter be erected upon the streets or wharves, or between them and the river to which they should adjoin and front, and the act of 1858 empowered the commissioners of pilots to direct the removal of all structures affixed to the wharves. These acts were in force at the time of the passage of the acts of 1870 and 1871, and the court below was clearly right, therefore, in declaring that they had not been repealed; and that, unless the act of 1871 gave the power to permit incumbrances, it did not exist.

The learned justice in the court below placed his decision on this subject upon the existing statutes referred to, and the judgments of the court of last resort, establishing the proposi-

tions that a wharf was a public street or highway (*Taylor agt. Atlantic M. Ins. Co.*, 37 *N. Y.*, 275), and that such a structure as the one contemplated was an incumbrance and unauthorized (*Comrs. of Pilots agt. Clark*, 33 *N. Y.*, 251). In consideration of the question stated, therefore, we start with the conclusion that when the acts of 1870 and 1871 were passed, there was no authority residing anywhere having the power to permit such an erection, the legislature and the courts of law having pronounced against their legality. What, therefore, was the design of the acts of 1870 and 1871? What did the legislature intend to accomplish? It is not very difficult to answer this question.

The object was to place under the control of a department, specially created therefor, the construction and regulation of the wharves, piers and slips of this city, to the same extent that such control had been given to the corporation; in other words, to transfer to it the powers possessed by the corporation, its officers and others, and such powers only.

There is not in the provisions of the act of 1871 anything which, properly interpreted, confers upon the department any other or larger authority. The statute of 1871, laws, page 1235, amendatory of the act of 1870, upon which this appeal depends, provides that the department of docks shall have exclusive charge and control of all the wharves, piers, bulkheads and structures thereon, and of the appurtenances, easements, uses, reversions and rights belonging thereto, which were owned or possessed by the corporation, or which it might acquire.

The language, as remarked by the court below, is very comprehensive; but it is only so for the gift of the powers really conferred, and which, as already suggested, are those which the corporation formerly possessed.

The conclusion of the section (2) provides, and this is a key to the extent of the act: " The duties and powers heretofore performed and exercised by any officer, department or bureau of said corporation, in and about all or any part of said pro-

perty, are hereby conveyed to and vested exclusively in the said department."

The position assumed by the court below is that the control of the piers and bulk-heads, with the structures thereon, and the authority to repair, build and rebuild such property, was amply sufficient, not only to cover the wharves where structures were then erected, but to empower the department to grant permission to build others of a similar character, and that the legislature intended to invest the department with discretionary power thereto.

The word "structures" seems to have had a controlling influence; but it is submitted, with great respect, that the act related only to the legal structures, and to no other.

It cannot be said that the legislature intended, by the mere use of a word in proper connection with a subject expressed and legislated upon, to legalize what was prohibited, and against which the courts had pronounced their judgments. The use of that word implies equally the power to remove them, which had been conferred upon the commissioners of pilots by the act of 1858, *supra;* and this view is in harmony with the design of the legislature to vest in the department all the powers theretofore conferred in reference to the construction, control and regulation of wharves, piers and slips. The legislature was acting upon the subject of wharves, piers and slips, with the design of centralizing the powers in reference to them, and must be supposed to have done so with regard to existing statutes and laws otherwise declared, intending to embrace, for that purpose, all matters legally within the legitimate sphere of the subject, and necessary to establish the jurisdiction. The use of the word mentioned cannot, without doing violence to established principles, be regarded as a repeal of the existing acts of the legislature, or as legislative declaration that the law administered by the court of last resort was to be changed; and yet, to give it the significance it has received, such a result must follow.

It is well settled that repeals of acts of the legislature by

People agt. Mallory.

implication are not favored, and not allowed, save when their repugnancy and inconsistency are plain and unavoidable.

The earlier statute remains in force, if not repugnant or inconsistent, unless the latter takes some notice of the former, plainly indicating an intention to abrogate it (*The People agt. Denning*, 1 *Hilt.*, 271; *Bowen* agt. *Dease*, 5 *Hill*, 225). All acts *in pari materia* should be taken together as if one law (*People* agt. *Denning, and cases cited*).

These acts may remain and are not inconsistent. The department of docks may exercise power over structures on the piers legally existing, if any, when the act was passed; such, for example, as suitable derricks, authorized by the act of 1867, laws, volume 2, page 2382, for unloading canal boats and barges, and over those not legal until their removal is demanded or required by virtue of the act of 1858, or upon the ground that they are incumbrances and subject to removal. It has been said, and justly, that a construction which repeals another statute should be very clear, when the repeal is of a part of a statute and seriously mars the harmony of a system (*Hayes* agt. *Symonds*, 9 *Barb.*, 260); and the same remark applies where the alleged repeal is of one of several statutes relating to the same subject, and seriously affects the whole system evolved. It is also a principle in the interpretation of a statute that it should not be construed to work a mischief, *e. g.*, curtailing a right of way of a navigable river or interfering with a highway, unless required by words of the most explicit and unequivocal import (*Sprague* agt. *Birdsall*, 2 *Cow.*, 419; *People* agt. *Lambert*, 5 *Den.*, 9). And so in this case, the mischief of allowing a department a discretion to incumber a public highway or street should not be sanctioned unless required by express words.

The exclusive use of a pier or wharf given to any particular class of vessels must be understood to be for the purposes of navigation or commerce only, and subject to the right of the public to the use of the surface as a public street or highway. The exclusive use, assuming the power to grant it, does not

necessarily confer the absolute control of the pier for a par-
ticular purpose.

It has been held that the common council cannot contract
away its legislative power. It can make no contract which
restricts its legislative authority over the particular subject
embraced in the contract. If, therefore, a grant or lease
were made by the common council, assuming them to be
properly authorized .to do so, of the exclusive use of a pier
for the purposes of commerce, it would mean such use only,
and not necessarily grant or convey such absolute power or
authority over the pier as to exclude the public in their
enjoyment of it as a highway or public street.

It was said on the argument that the use of the pier for
the defendants' vessels was a devotion of it to commerce, and
therefore to a public use and for the public convenience and
benefit.

To this it may be said, in the language of chief justice
DENIO, in *Commissioners of Pilots* agt. *Clark* (*supra*) : " The
language and obvious policy of the statute is that these piers
and bulk-heads should be kept clear of incumbrances, and it
will not answer for parties permanently to engross portions
of their area, and then ask a jury to speculate upon the.
degree of inconvenience which the public would suffer, and
whether it was not fairly balanced by the advantage of the
structure which constituted the incumbrance." In addition
to these observations it may be said with great force that as
long as the wharves are held to be parts of the public streets or
highways they must be used accordingly, and therefore, with
reference to well established public rights, subject only to
such difference as the ordinary incidents of commerce may
render necessary and justify.

Having arrived at these conclusions, it is not necessary to
consider whether the legislature, by virtue of an inherent
power over the navigable waters of the state, may grant
authority to incumber the public highway in the manner
designed by the defendants. It is not necessary, because it

seems that they have not delegated any such authority; the construction adopted of the act of 1871 being that it conferred upon the department of docks only the authority, in reference to and power over the wharves, piers and slips, which had been conferred by acts of the legislature or by charter upon the corporation, and its officers connected therewith, and others in relation thereto, and that none of them contained the general power to erect or permit the erection of an incumbrance upon any wharf or pier such as contemplated by the defendant. The order made at special term should therefore be reversed.

Ordered accordingly.