### PEOPLE v. BOSTWICK et al.

*(Supreme Court, Special Term, New York County.  February, 1889.)*

WHARVES—PIERS IN EAST RIVER—OBSTRUCTIONS—REBUILDING PIERS.

    Consolidation act, (Laws 1882, c. 410,) § 772, authorizes the erection of sheds upon piers under license and permit from the department of docks. Section 773 provides that it shall not be lawful to interfere with the free public use, as now enjoyed, of any pier in East river which has been heretofore used for loading and discharging sailing vessels regularly engaged in foreign commerce. *Held*, that the removal of an old pier used by sailing vessels engaged in foreign commerce, and the erection of a new one on the same lines, with only such alterations as were necessary to conform to the new bulk-head line, and to extend it beyond the point at which the old ended, does not operate to destroy the rights of the public in such pier, and they attach to the new one.

At chambers.   On motion to continue temporary injunction *pendente lite*.   *The Attorney General* and *E. P. Wilder*, for plaintiff.   *John Ed. L. Cadwalader*, for defendants.

PATTERSON, J.   This action is brought to restrain the defendants from proceeding with the erection of a structure called a "shed," upon the pier at the foot of Jefferson street, East river, in the city of New York, and to compel the removal of such portion of the structure as has already been built. A temporary injunction was issued, and it is now to be determined, after a full hearing of the parties, whether that injunction shall be continued until judgment upon trial or not. The claim of the people of the state is that the structure complained of is an unlawful obstruction sought to be put upon the pier in violation of express provisions of law. The defendant Bostwick contends that he, as lessee of the city of New York of the pier in question, has obtained from the proper authorities a license or permit enabling him to erect the shed, and that under the existing law it was competent for the city to give, and for him to receive and act upon, that license or permit. The general rule of law respecting the erection of buildings or sheds upon the docks, wharves, and piers of the city of New York, prior to the year 1871, has been announced in several adjudications of this court, and in the court of appeals. A condensed statement of it is given in the opinion prepared by Mr. Justice MACOMBER at the general term in *People* v. *Railroad Co.*, 3 N. Y. Supp. 29,

(decided at the December term, 1888,) although all the authorities are not cited. It is there said that "under the ancient charters of the city of New York, and under colonial and state legislation down to the year 1871, incumbrances and obstructions upon the wharves and piers, which might interfere with free navigation, (free use of the wharves, etc.,) seem not to have been permitted by law. *People* v. *Mallory,* 46 How. Pr. 283; *Commissioners* v. *Clark,* 33 N. Y. 251." The charters and legislation referred to are mentioned by Mr. Justice BRADY in *People* v. *Mallory.* But the legislation of 1871 did not permit these obstructions to be made. In that year the legislature-created a new system respecting the docks, wharves, and piers of the city; or, as Judge FINCH states it in *Kingsland* v. *Mayor,* 110 N. Y. 578, 18 N. E. Rep. 437, "the city charter of the previous year was amended so as to change the whole dock system of the harbor. The law provided for a plan which should girdle the whole city with new wharves and piers belonging wholly to the municipality," etc., and "the act vested in the department of docks authority over the whole system, and enacted that ' from the time of the adoption of the plan no wharf, pier, bulk-head, basin, dock, slip, or any wharf, structure, or superstructure shall be laid out, built, or rebuilt, within such territory or district, (which includes the pier in question,) except in accordance with such plan.'" The learned judge for the court then proceeds to say: "At this date [1871] sheds existed on many piers leased by steamer lines, and which excluded the last opportunity of anything like a public use, and made them, in effect, completely private wharves. These sheds, whether erected with or without the assent of the city, were unlawful, and a violation of positive law. In *People* v. *Mallory,* 2 Thomp. & C. 76, the question was raised. An attempt was made to argue from the use of the word ' structures ' in the act of 1871 an intention to legalize existing sheds, and ratify their construction. The attempt failed. The court held, and I think with entire accuracy, that the act of 1871 in no manner made lawful the erection of sheds upon piers or bulk-heads, that no authority existed for their construction, and that they were forbidden by positive law."

Up to this point, therefore, we have it established that all these structures were unlawful, and that under the act of 1871 no power was vested in the department of docks to permit their erection upon piers. The new dock system was authorized, and a new plan was subsequently adopted by the proper municipal authorities, but until the year 1875 nothing was done to legalize what is termed the "shedding" of the wharves or piers. In that year an act was passed which for the first time gave legislative sanction to the obstruction of the piers by buildings of this character, and it is upon that legislation the defendants must rely. It was subsequently, in substance, re-enacted as section 772 of the consolidation act, (chapter 410, Laws 1882,) and is, so far as material, as follows: "Whenever any person, company, or corporation, engaged in the business of steam transportation, shall be the owner or lessee of any pier or bulk-head in the city of New York, and shall use and employ the same for the purpose of regularly receiving and discharging cargo thereat, it shall be lawful for such owner or for such lessee, with the consent of the lessor, to erect and maintain upon such pier or bulk-head sheds for the protection of property so received or discharged, provided they shall have obtained from the department of docks in said city a license or authority to erect or maintain the same, and subject to the conditions and restrictions contained in such license or authority. All sheds or structures erected or maintained upon any wharf or, pier in the city of New York, under any license or permit granted by the department of docks in said city, are declared to be lawful structures," etc.; and it is provided, in effect, that the owner or lessee, with such a permit, may have the exclusive use of the premises so owned or leased during the continuance of the license or permit.

The facts appearing on behalf of the defendant Bostwick show that he is

the lessee of the pier, and that he has such a permit from the dock department as is referred to in the section quoted, and that he or his assignee is engaged in the business of steam transportation.   But the power and authority vested in the dock department, to confer the right to build upon a pier, and the exclusive use thereof, is subject to a limitation or reservation which the plaintiff urges renders the permit granted to Bostwick ineffectual.   It is an exception contained in section 773 of the consolidation act, which provides that "it shall not be lawful to interfere with the free public use, as now enjoyed, * * * of any wharf, pier, or slip, or bulk-head adjacent thereto, in the navigable waters of the East river, in the city of New York, which has been heretofore used for the loading and discharging of sailing vessels regularly employed in foreign commerce, and having a draft of more than eighteen feet of water, and the provisions of the preceding section shall not apply to any such wharf, pier, or slip," etc.   It is clearly shown in this case that heretofore, and before the destruction and removal in the year 1888 of the pier situate at the foot of Jefferson street, that pier was used by sailing vessels answering the description and ' engaged in the commerce referred to in this section.   Taking the two sections together, it would follow as a necessary consequence that if the pier, the shedding of which has been enjoined, is the same pier as that to which vessels resorted within the contemplation of section 773, there would be an undoubted right of the people of the state to maintain the injunction.   But there is now introduced a new set of circumstances giving rise to and opening for discussion another question.   It is asserted by the defendant that the present pier at the foot of Jefferson street is not that pier which was used by sailing vessels engaged in foreign commerce, but that it is an entirely new pier, built on a different plan, existing under different conditions, and subject to a different rule.   The proper consideration of this contention requires a recital of the facts upon which it is based.

Prior to May 1, 1888, the pier which extended into the East river at the foot of Jefferson street was known as "No. 46."   At about that date the department of docks of the city of New York determined to remove that pier, and build another.   A contract was made, pier 46 was entirely demolished, the material of which it was composed was removed, and another construction was put up, now called "Pier 36, new."   It was finished about January 10, 1889, and as pier 36, new, has been leased to the defendant Bostwick, with the license to erect the shed.   Is this pier 36 a new pier, (in other respects than as to the material of which it is composed,) and not the same pier as that formerly known as No. 46?   If it is a new, distinct, and different pier, it is not within the exception of section 773 of the consolidation act, and the department of docks had power to permit the shed to be constructed.   It is argued by the defendants that it is an entirely new pier, relieved from the restriction as to shedding, because it was projected and built in accordance with the plan adopted for the new system of docks under the authority of the act of 1871.   Upon that plan a new bulk-head line was laid out for the East river, situated 130 feet easterly of the bulk-head line as it existed before April, 1871.   There was also projected on the plan a new pier 36, which was located to the south of pier 46, and between it and pier 45.   The new pier was to extend into the river 350 feet, and was to be 80 feet wide.   By this original location it was to be in every respect independent of old pier 46.   Nothing in its situation or dimensions was to be similar to the old pier.   This projected new pier was never erected.   Instead of that, it was determined to remove old pier 46, and to change the site of new pier 36 to the foot of Jefferson street, and to alter its width as fixed upon the plan from 80 to 40 feet.   The dock department had authority to change the location and width of piers laid out on the new plan by consent of the commissioners of the sinking fund, and that consent was applied for and obtained

with respect to new pier 36. The new construction, as built, certainly does differ in some particulars from old pier 46. It begins at the new bulk-head line, which is distant 130 feet easterly from the bulk-head at which pier 46 began, but it is built substantially on the lines of pier 46 for some distance, and is carried on almost continued lines beyond the point in the river at which pier 46 ended. From the new bulk-head line to a point at which the easterly line of the old pier was drawn it is merely a new structure, taking the place of the old pier. It seems to me that this new construction is not the erection of a new pier on the new plan, although done under color of a change in the location of a pier laid out on the new plan, but is a rebuilding and extension of the old pier,—the placing of a new structure on the site of the old pier to take the place of that which was removed. In making this new construction the dock department was obliged to conform to the new bulk-head line, for whether in building a new pier in a new location, or rebuilding an old pier, the statute required the new bulk-head line to be the starting point. If pier 46 had been destroyed by the elements, and it was intended to rebuild it, the statute imperatively required that it should begin at the new, and not the old, bulk-head line; and this new construction conforms almost exactly to the lines of the old pier east of the new bulk-head line, although it is prolonged beyond the point at which the former construction ended. It is in fact merely a substituted structure, built precisely as it would have been built (with trifling deflections of direction) had the avowed purpose been to rebuild and extend pier 46. We must look at what has actually been done by the dock department, and not merely to the forms pursued to effectuate what it has done. Incontestably the location of a projected new pier may be changed on the new plan by consent of the commissioners of the sinking fund, but that cannot be done in such a way as to destroy the public right in piers, which by the express will of the legislature are to be kept open for the free use of those engaged in foreign commerce within the terms of section 773 of the consolidation act. If what has been done as to this pier operates a lawful change in the location of a new pier, then every pier in the East river used for purposes corresponding to those for which pier 46 was used may, under the pretext of a change of location of a new pier projected on the plan of 1871, be demolished, a new structure as to material put up, and the beneficial provisions of section 773 be completely nullified. The statute cannot be thwarted and evaded in this way. The authority to change the location of piers must be construed in connection with the interdiction upon interference with the free public use mentioned in section 773, and the removal of a pier to be replaced by another would be a total destruction of the public use, unless the substituted structure is to be regarded as open to that free public use. The intention of the legislature is plain, and plainly expressed, and the power of the dock department is subordinated to that intention. I am of opinion that the injunction must be maintained for the reasons mentioned. I have no doubt that the erection of the shed would interfere with the free use of the pier. Motion to continue the injunction *pendente lite* granted, with $10 costs to abide the event.