THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. THE BALTIMORE AND OHIO RAILROAD COMPANY, Appellant.

The sovereign power of eminent domain, subject to the restrictions imposed by the Constitution, may be exercised with respect to the public as well as the private rights of the citizen.

The legislature has power and may delegate the power to municipal authorities to withdraw from public use what is, in legal contemplation, a public highway and appropriate it to some other or *quasi* private use, subject only to the restriction that the new appropriation shall be in the direction of public utility.

The act of 1875 (Chap. 249, Laws of 1875), making it lawful for the owner or lessee of a pier or bulk-head in the city of New York, used for the purpose of regularly receiving and discharging cargo, upon obtaining a license from the department of docks to erect and maintain sheds upon such pier or bulk-head for the protection of property so received and discharged, and legalizing existing structures of the kind put up under such a license, is constitutional.

*Bedlow* v. *N. Y. F. D. D. Co.* (112 N. Y. 274), distinguished.

The limitation contained in the consolidation act of 1883 (§ 773, chap. 435, Laws of 1883), which prohibits the interference "with the free public use * * * of any wharf or pier * * * in the navigable waters of the East river * * * which *has heretofore* been used for the loading and discharging of sailing vessels regularly employed in foreign commerce," etc., refers to wharves and piers which have been and are in common and continuous use for the purposes specified.

Where, therefore, in an action brought to restrain the erection of a shed upon a pier, in said city, in pursuance of a license granted by the dock department, it appeared that the pier was, prior to 1864, much used by the description of sailing vessels mentioned in the consolidation act, but that by the year 1870 they had been nearly superseded by steamships, and since that year it had only occasionally been used by the class of sailing vessels mentioned, and for four or five years preceding the commencement of the action had not been so used at all. *Held*, that the limitation did not apply.

The effect of a permission to shed a pier necessarily is to give the licensee exclusive possession, and authorizes the erection of a structure exclusive and permanent in its character.

(Argued October 8, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 23, 1888, which affirmed a judgment in favor

of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts are sufficiently stated in the opinion.

*W.. W. MacFarland* for appellant. The shed was not an unlawful structure. (*People* v. *Mallory*, 2 Sup. Ct. 76; *People* v. *Macy*, 62 How. Pr. 65; Laws of 1875, chap. 249; Laws of 1883, chap. 435.) In any view of the statute no case is made for a mandatory injunction. (*City of Georgetown* v. *A. C. Co.*, 12 Peters, 94; *Atty.-Gen.* v. *N. J. R. & T. Co.*, 3 N. J. Eq. 136; 18 Vesey, 217; *Atty.-Gen.* v. *U. Ins. Co.*, 2 Johns. Ch. 371, 381; *Atty.-Gen.* v. *Richards*, 2 Anst. 603; *Atty.-Gen.* v. *Cleaver*, 18 Vesey, 211; *Mayor, etc.*, v. *Bolt*, 5 id. 129; Story's Eq. Juris. § 924; *M., etc., R. R. Co.* v. *Ward*, 2 Black. 495; *Health Department* v. *Purdon*, 99 N. Y. 237.) Although the jurisdiction invoked in this case exists, its exercise is limited and restricted by very strict rules which the court adopted in the beginning and has never relaxed. (*Atty.-Gen.* v. *Dorking*, L. R. [20 Ch. Div.] 595.) The injury must be material and in judgment of law irremediable. (*N. R. R. Co.* v. *B., etc., R. R. Co.*, 3 R. Cas. 345; *Hilton* v. *Granville*, 4 Beav. 130, *Saunders* v. *Smith*, 3 M. & C. 711; *Holyoke* v. *S., etc., R. R. Co.*, 5 R. Cas. 421; *Maythorn* v. *Palmer*, 11 L. T. [N. S.] 261.) The exercise of the power to grant mandatory injunctions is one that must be attended with the greatest possible caution. (*Isenberg* v. *E. I. H. E. Co.*, 3 De G., J. & S. 263.) Nor will the court in any case, as a rule, compel the defendant to undo what has already been done. (*Bradbury* v. *M., etc., R. R. Co.*, 15 Jurist, 1167.) The shed is a public benefit and a public necessity. (*Wheeling Bridge Case*, 13 How. [U. S.] 605; *People* v. *Canal Board*, 55 N. Y. 390; *Moore* v. *B. C. R. R. Co.*, 108 id. 98.)

*William R. Wilder* for respondent. All the piers and wharves in the city of New York are but lateral extensions of the public highways, and as such should be free and open

to the public use for the general commerce of this port. (*Marshall* v. *Guion*, 11 N. Y. 461; *Comrs. of Pilots* v. *Clark*, 33 id. 255; *Taylor* v. *A. M. Ins. Co.*, 37 id. 284; *In re N. Y. C. & H. R. R. R. Co.*, 77 id. 257; *Mayor, etc.*, v. *N. S., etc., F. Co.*, 55 How. 155; *People* v. *Lambier*, 5 Den. 9; *Radway* v. *Briggs*, 37 N. Y. 257; *Comrs. of Pilots* v. *E. R. Co.*, 5 Robt. 366; 41 N. Y. 619; *Gould* v. *H. R. R. R. Co.*, 6 id. 546; *Bedlow* v. *N. Y. D. D. Co.*, 112 id. 274; *Smith* v. *City of Rochester*, 92 id. 477; *Langdon* v. *Mayor, etc.*, 93 id. 156; *Yates* v. *City of Milwaukee*, 10 Wall. 497; *Gilman* v. *Ogden*, 9 Wheat. 1; *Stevens* v. *P. & N. R. R. Co.*, 5 Vroom, 532; *Williams* v. *Mayor, etc.*, 105 id. 419; *Kingsland* v. *Mayor, etc.*, 110 id. 569; 45 Hun, 206; Gerard on City Water Rights, 84, 190; *Mayor, etc.*, v. *M. C. Co.*, 1 Beas. 548, 557; *Newark* v. *Mayor, etc.*, 2 McCarter, 64; *Godfrey* v. *Alton*, 12 Ill. 36.) Any permanent obstruction on any public pier or public highway which in any way interferes with its free public use is a purpresture and a nuisance, irrespective of any question of public or private convenience, benefit or damage, and must be enjoined and removed at the instance of the attorney-general, and no power except that of the legislature, within proper limits, can lawfully authorize its presence or continuance. (Wood on Nuisances, 85, 88, 90, 94, 96, 778, 779, 781, 801, 811; *People* v. *Vanderbilt*, 26 N. Y. 287; 28 id. 396; 38 Barb. 293; *People* v. *M. T. Co.*, 11 Abb. N. C. 313; *Davis* v. *Mayor, etc.*, 14 N. Y. 525; *King* v. *Ward*, 4 A. & E. 384; *Hart* v. *Mayor, etc.*, 9 Wend. 571; *Comrs. of Pilots* v. *Clark*, 33 N. Y. 255; *People* v. *Cunningham*, 1 Den. 524; *People* v. *Thompson*, 98 N. Y. 11; *People* v. *Macy*, 62 How. 65.) The dock department has no authority to confer an exclusive private right in and to a public street or pier, and the granting of the license and the setting aside of the pier was an unwarrantable assumption of power. (*People* v. *Comrs.*, 54 N. Y. 276; *People* v. *Allen*, 42 id. 378; *People* v. *Devlin*, 33 id. 269; *Fowler* v. *Mott*, 19 Barb. 219; *Hoeft* v. *Seamond*, 6 J. & S. 67; *Milhau* v. *Sharp*, 27 N. Y. 611; *People* v.

*Kerr*, Id. 188; Wood on Nuisances, chap. 23, § 752; *People v. Vanderbilt*, 28 N. Y. 396; *Langdon* v. *Mayor, etc.*, 6 Abb. N. C. 314, 329, 337; 93 N. Y. 129.)

GRAY, J. The judgment of the court below directs the defendant in this action to remove a shed, or structure, which it had erected upon a pier in the East river, in the city of New York; and further restrains the defendant from continuing to use the shed, or from placing upon that pier any structure, which would be calculated to interfere with the free use of it by the public. The defendant is a foreign railroad corporation, having a terminus at the port of New York, and through its own and connecting lines of railroad, as we are informed by the record, carries on the business of transporting freight and passengers between the city of New York and the principal commercial centres of the United States. For the needs, as well as in furtherance, possibly, of its business, it acquired, in August, 1886, by lease from the owners thereof, the East river pier in question, and, immediately thereafter, applied to and obtained from the department of docks of the city of New York the permission to construct a shed upon it. Under that license the railroad company commenced and had nearly completed the erection of a shed, suitable for its purposes of receiving and discharging merchandise, which was brought there, or was carried to and from its railroad by means of steamers or other vessels, This action was then brought, in the name of the People, by the attorney-general, upon the solicitation of private persons engaged in business in the vicinity of the pier, and who conceived themselves to be aggrieved, or their interests to be damaged, by the defendant's inclosure of the pier. The action proceeded upon the theory that the company could not lawfully erect the shed in question and thereby secure the exclusive possession and use of the pier for its corporate purposes, and the judgment, which the People obtained, sustained and was founded upon that theory. The action, in effect, treated the license of the

dock department as without authority in law, and hence con-
ferring no right upon the company to avail itself of its terms.
The point was made that the case was brought within the
inhibition of section 773 of the consolidation act. The pro-
visions of that section were enacted in chapter 435 of the
Laws of 1883, and that was an act in amendment of the third
section of chapter 249 of the Laws of 1875, popularly known
as the " shed act." It was entitled "An act to regulate the
use of slips, wharves and piers in the city of New York," and
it provided that " whenever any person, company or corpora-
tion engaged in the business of steam transportation shall be
the owner or lessee of any pier or bulk-head in the city of
New York, and shall use and employ the same for the purpose
of regularly receiving and discharging cargo thereat, it shall
be lawful for such owner or lessee   *   *   *   to erect and
maintain upon such pier, or bulk-head, sheds for the protection
of property so received and discharged, provided they shall
have obtained from the department of docks in said city a
license or authority to erect and maintain the same and
subject to the conditions and restrictions contained in such
license or authority." The act further legalized existing
structures, which may have been put up under such a license
from the department. The inhibition, referred to as con-
tained within the provisions of the act of 1883, was found in
its amendment of the third section of the act of 1875. The
following is the provision, or so much of it as becomes
material to our consideration, viz : " It shall not be lawful to
interfere with the free public use as now enjoyed   *   *   *   of
any wharf or pier   *   *   *   in the navigable waters of the
East river in the city of New York, which has heretofore
been used for the loading and discharging of sailing vessels
regularly employed in foreign commerce and having a draft
of more than eighteen feet of water, and the provisions of this
act shall not apply to any such wharf or pier.   *   *   * "

The passage of chapter 249 of the Laws of 1875 was due to
the alarm occasioned in the minds of the occupants of wharves,
piers, bulk-heads, etc., by the knowledge that the sheds, with

which they had covered these properties, were unlawful structures. This knowledge was generally brought home to the community by a decision of the Supreme Court, at General Term, in the first judicial department in 1873. In the case of *People* v. *Mallory* (46 How. Pr. 281) that court had pronounced a permit, issued by the commissioners of the dock department to the defendant, to erect a shed on an East river pier to have been without lawful authority in those officers to grant. Such structures were held to be in violation of the existing laws, and, in the case of *Kingsland* v. *Mayor, etc.* (110 N. Y. 569), we have recently approved of the conclusion which the court reached in *People* v. *Mallory*. But, through the enactment of chapter 249 of the Laws of 1875, the dock department became possessed of the authority, which it previously lacked, and the many instances of its exercise of a supposed authority were ratified and legalized. Its permission to shed the piers had not been a protection to parties as against the public, for the reason that the power to withdraw from the public use what was, in legal contemplation, a public highway had not been delegated to it. Such a power could only reside in and proceed from the People of the state, who, in their right of sovereignty, possess the original and ultimate property in and to all lands, and to the navigable waters within the jurisdiction of the state.

The right to exercise the sovereign power of the People was vested in the legislative body; whose acts are supreme, when confined within the limits fixed by the Constitution of the state. An eminent dominion over all property in the state is an incident of the sovereign power. Where its exercise affects the property of the private citizen, it is restricted by the Constitution only in the feature that compensation must be made for its taking. The right of the state to take the property, however, is an absolute and inherent one. It is an attribute of political sovereignty, and the constitutional provision only operates upon the mode of exercise of the right. If an exercise of this power, as for instance, as in this case, by permitting a use and an appropriation of a public pier to some other or

*quasi* private use in the way proposed by the defendant, affects some existing or natural right of the public to the use of a highway, I cannot find in the organic law of the state, nor can I find upon principle any restriction upon the legislative action, other than that it shall be in the direction of public utility. It seems to me self-evident as a proposition that the sovereign power, subject to the restrictions interposed by the fundamental law, may be exercised with respect to the public as well as the private rights of citizens. That seems to follow logically as the necessary understanding of the governed of the scope and design of the political dominion of the state, and it finds reason and support in the principle underlying all forms of government that, for ends of the public utility and good, all other ends should yield.

It is said in this case that the use of the pier, being a public or natural highway, was in the People as *jus publica* and cannot be impaired by legislation ; and our recent decision in *Bedlow* v. *New York Floating Dry Dock Company* (112 N. Y. 274) is cited in that connection. But in that opinion the feature of public utility, which I have adverted to here, is distinctly recognized ; for RUGER, Ch. J., says : " The power of regulating, controlling and improving such waters in the interest of commerce undoubtedly exists. The right, therefore, of the city to erect structures in the navigable waters of the state must necessarily remain subject to the sovereign authority over such highways." In my opinion the argument cannot be maintained that, in its delegation to the dock department of the power to authorize the shedding of a wharf or pier for private purposes, the legislature has abridged a public right and, therefore, overstepped the limits of its powers. I think its action was in the direct line of a sound, public policy. What it authorized to be done is in the general interests of that municipality, and, though a private interest may be benefited, that is an incident. The main feature and purpose are the recognition and furtherance of the commercial interests and needs of the community. The use of the piers and bulkheads for commercial purposes connected with shipping is an

essential advantage to the inhabitants of the city of New York, and whatever best promotes the beneficial use of its great water front is demanded in the exercise of political wisdom.

It was found as a fact in this case, that it was necessary for wharves and piers to be covered and enclosed, in order that property, to be received and discharged by railroad companies, or other occupants, should be protected from loss and injury, and that all piers and wharves used for that purpose are shedded. This is an obvious fact, also, from the language of the act of 1875 ; the first section of which is a distinct recognition and ratification of an existing usage of shedding piers and wharves. Independent of finding and language, however, I think the legislative grant of power to the municipal body to permit the erection of structures upon these piers, etc., for the purpose of a protection to property, received and discharged, would be a justifiable act of public policy ; because of the evident reasons for such legislation and of the evident public utility of such a measure.

Coming, then, to the question of whether the limitation, imposed by the act of 1883, affects the pier of the defendant, I am unable to see that it does. The act of 1883 created an exception to the general power vested in the dock department by the act of 1875. The wording of the clause making the exception is somewhat peculiar. It is with respect to a wharf, pier, etc., "which has *heretofore* been used for the loading, etc., of sailing vessels regularly employed in foreign commerce and having a draft of more than eighteen feet of water." This provision operated in restraint of a previously existing general power, and to deprive the dock commissioners of authority in certain cases. When they have exercised their power and authority, as in the present case, it should very clearly appear that the case is within the exception of the statute, before reversing their action. The trial judge expressly found, in substance, that, while prior to 1864 this pier was much used by the description of sailing vessels mentioned in the statute, from that time on, steamships were rapidly

substituted for them, and by the year 1870 they had nearly superseded the sailing vessels engaged in such commerce. Since 1870 this pier has only occasionally been used by that class of sailing vessels, and in the four or five years preceding the commencement of the action it was not so used at all. The general finding of fact, which the trial judge made, that the pier "was for more than twenty years prior to the year 1883 used and resorted to by ships and vessels" of the description referred to, does not militate against the other findings I have referred to. It was not necessarily inconsistent, or contradictory, and, as a general finding, its effect and meaning were explained by the more particular findings, as to what and when was that use during the period of time of twenty years prior to 1883.

The words "heretofore been used" in the amendatory section of the act of 1883, should be taken in their usual and ordinary sense and signification. Whenever the legislature has expressed its will in words having a common acceptation, and a plain, as contra-distinguished from a technical meaning, we must read them as they would be supposed to be used and understood generally. So read, "heretofore" would, to the ordinary mind, convey the idea of before this time, that is to say, "hitherto," "down to this time," and not at all the idea of comprehending any remote time, in this or the last century. The construction, which must convey the true intent of this legislative act, is, that piers, which have been in common and continuous use by sailing vessels, engaged in foreign commerce, of a draught of more than eighteen feet, shall continue open to that use.

The manifest object of making such a reservation was to prevent piers then in such use, and, hence, presumably much needed by the public, from being exclusively used by private persons, or corporations. We are informed from the findings in this record, that not only has this pier not been customarily used by the public for some time previous to its acquisition by the defendant, but that its use, in the manner contemplated, in no sense works an injury to public interests, or operates to

make the accommodation inadequate for sailing vessels at open piers on the East river. In my opinion, therefore, this pier is not one of those covered by the limitation of the act of 1883.

As to the suggestion that the defendant's structure is concededly exclusive and permanent in its character, it seems to me sufficient to say that, of necessity, the shedding of a pier by a licensee of the dock department, under the act of 1875, must result in giving exclusive possession of the pier. Without full control of the pier by the company, where would be the adequate or proper protection for the property received and discharged, which the act of 1875 had in view. The permission to shed a pier, under the act, amounts to turning the public pier into a private one for the time, and such must have been, it is humanly reasonable to suppose, the understanding of the legislature of the possible effect of its delegation of power to the dock department.

It results, from the views I have expressed, that the conclusion of the trial judge, that the defendant's structures were unlawful and prohibited by the statute, was erroneous, and, therefore, that the judgment entered upon it, and the judgment of affirmance at General Term should be reversed and a new trial ordered, costs to abide the event.

All concur, except ANDREWS and DANFORTH, JJ., dissenting.

Judgment reversed.